In the Matter of HAROLD E. MAYO, Respondent, v SUZANNE M. MAYO, Appellant. [880 NYS2d 380]—

Garry, J. Appeal from an order of the Family Court of Schuyler County (Argetsinger, J.), entered March 31, 2008, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

The parties have three children, born in 2001, 2002 and 2006. Pursuant to stipulations incorporated into Family Court orders in July and September 2006, petitioner (hereinafter the father) and respondent (hereinafter the mother) share joint legal custody of their children, the mother has physical placement and the father has specified visitation.

The father's brother (hereinafter the uncle) was convicted in 1999 upon a guilty plea in Washington of two counts of child molestation in the first degree, defined as sexual contact with a child under the age of 12 for the purpose of the offender's sexual gratification. The underlying offense was based upon molestation of his 10-year-old stepdaughter. He received a six-month sentence of incarceration with work release and an 82-month suspended sentence conditioned upon his participation in a therapeutic program for sex offenders. Before completing the term of his suspended sentence in May 2006, the uncle violated its terms by failing a polygraph test and by attending a party where children were present. He participated in the required sex offender treatment until May 2006, when he completed his probation.

During the summer of 2006, the uncle came to Schuyler County. The mother commenced a modification proceeding to prohibit him from having contact with the children. That proceeding was settled based upon the father's representation that the uncle had returned to Washington. In December 2006, Family Court issued an order adopting the parties' settlement and providing that the uncle was not to reside in the same household as the father or to be in the presence of the parties' children at any time. The order was entered without prejudice to either party's right to re-petition, in the event that the uncle returned to the area, without showing a substantial change of circumstances.

Thereafter, in April 2007, the uncle moved permanently to New York. The father then commenced this proceeding seeking to modify the order to permit the uncle to be in the company of the children. His petition was opposed by the mother and by the children's Law Guardian. Following a hearing, Family Court modified its prior order to provide that the uncle was not to reside in the father's home or on adjoining property or to be in the father's home or on his property while the children were visiting. The order further permitted the uncle to be in the presence of the parties' children at family events, provided that a minimum of two adults were present and the father notified the mother a reasonable time beforehand. The mother appeals, with the support of the Law Guardian.

The father properly sought modification without showing a change of circumstances, given the parties' stipulation preserving his right to do so and the brevity of the period of time between the stipulation and the commencement of this proceeding (*see Matter of Studenroth v Phillips*, 230 AD2d 247, 249-250 [1997]; *cf. Matter of Schattinger v Schattinger*, 256 AD2d 1209, 1209-1210 [1998], *appeal dismissed* 93 NY2d 919 [1999]). In visitation proceedings, the guiding consideration is always the children's best interests (*see Matter of Marshall v Bradley*, 59 AD3d 870, 871 [2009]).

The record does not reveal that the parties' children have formed a relationship with the uncle. The youngest child has never had any contact with him at all, and the only relationship the other children have ever had with him consisted of limited contacts during his 2006 stay in New York. The record provides scant basis for the conclusion that it would be in the best interests of the parties' children to develop a relationship with him, but there is a considerable basis for concern.

The uncle's testimony about the age of his victim was inaccurate. His expressions of remorse were limited to the effects of

his actions on his own marriage and family relationships rather than their effects on the victim. He testified that he stopped participating in sex offender treatment, not because he had completed the program, but solely because he was no longer legally obliged to participate. He was not engaged in any therapy or counseling at the time of the fact-finding hearing, although he stated that he had learned in the treatment he did undergo that severe sex offenders require continuing professional monitoring and support. As for the safety of children in his presence, he stated that he felt confident that children were safe as long as "aware adults" were present and he was not alone with them. He also testified, however, that at the time of the fact-finding hearing, he was living alone on a boat in a marina where children were often present and that he had not yet advised authorities that the marina was his full-time address. His record of compliance with sex offender registration requirements reveals a pattern of delay and inaccuracy. He did not advise New York authorities of his 2006 presence in the state, delayed in informing both Washington and New York authorities of his April 2007 move to New York and, after he did register with Schuyler County authorities, failed to keep them apprised of changes in his permanent address.

The father's testimony reflected an incomplete understanding of the nature and seriousness of the uncle's offenses, and a limited awareness of risks that contact could thus pose to the children. Though the father testified that he understood the conduct was heinous, and that he would watch the uncle "like a hawk" when the children were in his company, this testimony was significantly undermined by his further testimony that he would watch any adult just as carefully.

Family Court found that permitting the children to have limited contact with the uncle by attending family gatherings when he was present would allow them to maintain their relationships with cousins and other extended family members, and that strict restrictions on their contact with the uncle would ensure their safety without unduly burdening family relationships. Family Court has the power to impose restrictions on children's interactions with third parties during visitation if it is in the children's best interests to do so (*see Colley v Colley*, 200 AD2d 839, 840 [1994]; *Bohnsack v Bohnsack*, 185 AD2d 533, 535 [1992]). However, the mere fact that restrictions might be sufficient to protect the children's safety during such interactions does not establish that the interactions themselves are in their best interests. No reason appears in the record why the goal of enabling the children to maintain contact with their

cousins and other relations at family gatherings could not be safely accomplished by the simple expedient of requiring the uncle, rather than the children, to stay away from such gatherings.

The record does not, therefore, provide a "sound and substantial basis" for a determination that it is in the children's best interests to have contact with the uncle, even under the limited circumstances permitted by Family Court (*Matter of Marshall v Bradley*, 59 AD3d at 870-871 [internal quotation marks and citations omitted]). In the absence of such evidence, the order permitting such contact cannot be upheld (*see Bohnsack v Bohnsack*, 185 AD2d 533, 535 [1992]).

Spain, J.P., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the order is modified, on the facts, without costs, by prohibiting all contact between the parties' children and their paternal uncle, and, as so modified, affirmed.